LESTER L. BRIDER,

        Petitioner,

   v.

        Case No. 20-cv-119-pp

UNITED STATES OF AMERICA,

        Respondent.

**ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE UNDER 28 U.S.C. §2255 (DKT. NO. 1), DENYING PETITIONER'S MOTION TO APPOINT COUNSEL (DKT. NO. 6), DISMISSING CASE AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**

### I. Background

On January 27, 2020, the petitioner filed a motion to vacate, set aside or correct his sentence under 28 U.S.C. §2255, challenging his conviction in United States v. Lester Brider, Case No. 16-cr-170 (E.D. Wis.). Dkt. No. 1 at 2.

On November 22, 2016, the grand jury returned a superseding indictment against the petitioner and co-defendants Ronnie Bethly, Paul Rogers and Jrakar Gaddis, alleging a string of bank robberies and Hobbs Act robberies of businesses. United States v. Lester Brider, Case No. 16-cr-170 (E.D. Wis.), Dkt. No. 11. Count Twelve of the superseding indictment charged the petitioner, Jrakar J. Gaddis and Edward Williams with one count of Hobbs Act robbery in violation of 18 U.S.C. §§1951(a) and 2 (alleging that they had robbed a Metro PCS store). Id. at 12. Count Thirteen charged the petitioner,

Gaddis and Williams with one count of brandishing a firearm in furtherance of a crime of violence (the robbery of the Metro PCS store) under 18 U.S.C. §§924(c)(1)(A)(ii) and (C)(i) and 2. Id. at 13.

On July 24, 2017, the petitioner (represented by Attorney Rebecca Coffee) signed a plea agreement. Dkt. No. 70 at 13. The plea agreement was filed on July 26, 2017. The agreement stated that the petitioner was pleading to Counts Twelve and Thirteen of the superseding indictment. Id. at ¶¶2, 4. It reflected that the petitioner had read and fully understood the charges in the superseding indictment, the "nature and elements of the crimes with which he ha[d] been charged" and that his attorney fully explained "the terms and conditions of the plea agreement." Id. at ¶3. In the agreement, the petitioner acknowledged, understood and agreed that he was guilty of the offenses in Counts Twelve and Thirteen. Id. at ¶5. He admitted that facts attached to the plea agreement established his guilt beyond a reasonable doubt and were true and correct. Id. The agreement stated that the petitioner understood and agreed that the maximum term of imprisonment for Count Twelve was twenty years in prison, a $250,000 fine and three years of supervised release; he understood and agreed that Count Thirteen carried "a mandatory minimum of seven years of imprisonment to be served consecutive to any other term of imprisonment imposed." Id. at ¶6. The petitioner acknowledged, understood and agreed that he "discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney." Id. at ¶7.

The agreement also laid out the elements of the charges. Id. at ¶¶8, 9. It said that the parties understood and agreed that in order to sustain the Hobbs Act robbery charge in Count Twelve, the government must prove beyond a reasonable doubt that (1) the petitioner "knowingly obtained or attempted to obtain money or property from or in the presence of a person," (2) the petitioner "did so by means of robbery," (3) the petitioner "believed that the person parted with the money or property because of the robbery," and (4) "the robbery affected interstate commerce." Id. at ¶8. The parties confirmed that they understood and agreed that in order to "sustain the charge of brandishing a firearm during and in relation to a crime of violence" in Count Thirteen, the government must prove beyond a reasonable doubt that (1) the petitioner committed the Hobbs Act robbery alleged in Count Twelve and (2) the petitioner's "co-actor knowingly brandished a firearm during and in relation to that crime or in furtherance of that crime." Id. at ¶9.

The agreement confirmed that the petitioner acknowledged and agreed "that his attorney . . . discussed the applicable sentencing guidelines provisions with [the petitioner] to [the petitioner's] satisfaction." Id. at ¶12. The petitioner acknowledged and understood that the agreement did not "create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range." Id. at ¶14. The agreement reflected that "[t]he sentencing court [would] make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum

3

penalties" set forth in the agreement. Id. at ¶21. The petitioner acknowledged, understood and agreed that under the terms of the agreement, he could not "move to withdraw the guilty plea solely as a result of the sentence imposed by the court." Id. at ¶22. Finally, the petitioner acknowledged, understood and agreed that he would "plead guilty freely and voluntarily because he [was] in fact guilty," and that "no threats, promises, representations, or other inducements ha[d] been made, nor agreements reached, other than those set forth in [the] agreement, to induce [the petitioner] to plead guilty." Id. at ¶38.

On the day that the plea agreement was filed, Attorney Coffee filed a motion to withdraw as counsel. Dkt. No. 71. Counsel indicated that the petitioner "state[d] that he ha[d] an irreconcilable conflict with his attorney that [] resulted in a breakdown in meaningful communication, and which [would] prevent him from receiving an adequate defense in [the] case." Id. A week later, Magistrate Judge Nancy Joseph held a hearing on the motion to withdraw. Dkt. No. 74. At the hearing, Attorney Coffee indicated that she believed that the defendant needed a second opinion about whether to plead guilty or go to trial. The petitioner confirmed that he "need[ed]" a new attorney. Id. While Judge Joseph noted that "a new attorney may well give [the petitioner] the same advice as attorney Coffee," she granted the motion to withdraw "[g]iven the seriousness of the offense and the penalties [the petitioner] faced." Id. On August 11, 2017, Attorney Daniel Sanders appeared on behalf of the petitioner. Dkt. No. 75.

4

On December 5, 2017, the court held a change-of-plea hearing. Dkt. No. 96. The petitioner appeared in person with Attorney Sanders. Id. at 1. The court's minutes reflect that the court placed the petitioner under oath, reviewed the plea agreement with him, questioned him, "recounted that Count Twelve involved a maximum prison term of twenty years, a maximum fine of $250,000, and a maximum of three years of supervised release," recounted that "Count Thirteen carried a mandatory minimum prison term of seven years and a maximum of life, to run consecutively to any other sentence" and mentioned that each charge carried a "mandatory special assessment of $100," for a total assessment of $200. Id. "[T]he court found that [the petitioner] understood his trial rights, the penalties associated with the charges, the possible civil ramifications of a conviction, and the uncertainty of his ultimate sentence." Id. "The court also found that [the petitioner] entered the plea knowingly and voluntarily, without threats or promises." Id. "The court accepted [the petitioner's] plea of guilty, and found [the petitioner] guilty of the offenses charged in the superseding indictment." Id.

On March 15, 2018, the court held a sentencing hearing. Dkt. No. 124. The petitioner appeared in person with Attorney Sanders. Id. at 1. Attorney Sanders confirmed that he and the petitioner had reviewed the presentence investigation report and the petitioner's sentencing memorandum. Id. The court explained that the sentencing guidelines in the presentence report were advisory, but that the law required the court to begin its sentencing analysis with those advisory guidelines and consider their application to the factors in

§3553. Id. After considering the relevant base offense level and sentencing enhancements, the court calculated a total advisory sentencing range—"including the consecutive mandatory minimum sentence"—of one hundred fourteen to one hundred twenty-one months. Id. at 1-2. Neither party objected to the court's calculation, and each gave their respective sentencing recommendations: the government recommended that the court impose a sentence of one hundred fourteen months, while the petitioner argued for a sentence "closer to the eighty-four month mandatory minimum, with a longer supervised release term." Id. at 2.

The court "concluded that a sentence of ninety months of incarceration with credit for time served, followed by five years of supervised release, was sufficient but not more than necessary to address the §3553 factors." Id. "The court also ordered [the petitioner] to pay a special assessment of $200." Id. After agreeing to "recommend that the Bureau of Prisons place [the petitioner] in a facility as close as possible to the Dallas/Fort Worth area, and that it place him in a facility that provided the RDAP program," the court advised the petitioner "that he had a right to appeal, that he had a limited time in which to do so, and that he should discuss his appeal rights with his attorney." Id.

On March 20, 2018, Attorney Sanders filed a letter stating that he had "fully discussed with [the petitioner] his right to appeal his conviction and sentence," and that the petitioner asked Attorney Sanders "to inform the Court that he [did] not wish to appeal." Dkt. No. 120.

The court entered judgment on March 26, 2018. Dkt. No. 125. The court's judgment reflected the sentence: six months on Count Twelve (the Hobbs Act robbery count) and eighty-four months on Count Thirteen (the §924(c) count) to run consecutively to the sentence imposed on Count Twelve, for a total sentence of ninety months. Id. at 1-2.

Twenty-two months later, the petitioner filed this motion to vacate, set aside or correct his sentence under 28 U.S.C. §2255. Brider v. United States, Case No. 20-cv-119 (E.D. Wis.), Dkt. No. 1. The petition asserts that the United States Supreme Court's recent decision in United States v. Davis, \_\_\_ U.S. \_\_\_, 139 S. Ct. 2319, 2336 (2019) struck down 18 U.S.C. §924(c)(3)(B) as unconstitutionally vague. Id. at 6. He argues that his conviction for brandishing a firearm in relation to a crime of violence "falls under 924(c)(3)(B), not 924(c)(3)(A) (the force clause) as there was no use of force employed during [his] crime in question." Id. at 6-7. The petitioner contends that his "role was determine on record as not possesing a weapon at [his] sentencing . . . did not brandish." Id. "This fact," he states "further support the petitioner claim does not qualify as a crime of violence within" Davis. Id. at 2. The petitioner questions how he could "get convicted for Brandishing when [his] case report confirms [he] did not have a weapon." Id.

## II. Analysis

### A. Standard

In a §2255 proceeding, the court must first review—or "screen"—the motion. Rule 4 of the Rules Governing Section 2255 Proceedings provides that

7

> [i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

A petitioner seeking relief under §2255 must allege either that the sentence violated the Constitution or laws of the United States, that the court was without jurisdiction, that the sentence exceeded the maximum authorized by law or that the sentence is otherwise subject to collateral attack. 28 U.S.C. §2255(a). At the screening stage, the court considers only whether the petitioner has raised claims that can be adjudicated in a §2255 proceeding, whether the petitioner has exhausted his claims and whether he filed the motion within the limitations period.

### B. United States v. Davis

#### 1. *Timeliness*

28 U.S.C. §2255 imposes a one-year limitation period for filing motions to vacate, set aside or correct federal sentences. The one-year period begins on the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or law of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

8

> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). The petitioner did not file his §2255 motion within one year of his judgment becoming final under §2255(f)(1). He does not assert newly discovered evidence under §2255(f)(4), or that an impediment prevented him from filing his motion under §2255(f)(2). That leaves §2255(f)(3), "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." At least one district court in the Seventh Circuit has concluded that Davis recognized a new right that applies retroactively on collateral review, Carter v. United States, No. 16-cv-02184, 2019 WL 4126074, at *5 (C.D. Ill. Aug. 29, 2019), as has the Eleventh Circuit Court of Appeals, In re Hammoud, 931 F.3d 1032, 1037-1039 (11th Cir. 2019). The court will assume for the purposes of this decision only that Davis did recognize a new right and that it applies retroactively on collateral review. That means that the petitioner has timely raised his claim, because he raised it within a year of the date the Supreme Court decided Davis.

      2.    *Procedural Default*

While a claim must be timely, it must also be cognizable. For a claim to be cognizable under §2255, the petitioner must have raised the claim on direct appeal; "[a]ny claim that could have been raised originally in the trial court and then on direct appeal that is raised for the first time on collateral review is procedurally defaulted." Delatorre v. United States, 847 F.3d 837, 843 (7th Cir.

2017) (citing Hale v. United States, 710 F.3d 711, 713-14 (7th Cir. 2013)). "Procedurally defaulted constitutional claims are not considered on collateral review unless the petitioner shows either (1) actual innocence or (2) cause and prejudice." Delatorre, 847 F.3d at 843 (citing Bousley v. United States, 523 U.S. 614, 622 (1998)).

If the petitioner raised the claim on direct appeal, the "law of the case" doctrine dictates that a Circuit Court of Appeals' decision becomes binding when that defendant later raises the same claim through a §2255 motion to vacate, set aside or correct a sentence. Fuller v. United States, 398 F.3d 644, 648 (7th Cir. 2005) (citing United States v. Mazak, 789 F.2d 580, 581 (7th Cir. 1986)).

The petitioner argues that his sentence and conviction violate Davis. Dkt. No. 1 at 6. He states that the Davis decision "invalidated 18 U.S.C. 924(c)(3)(B) as being unconstitutionally vague." Id. The petitioner raises this claim for the first time in the §2255 motion.

> A claim cannot be raised for the first time in a § 2255 motion if it could have been raised at trial or on direct appeal. *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir.2009). Likewise, a § 2255 appellant cannot raise for the first time on appeal a claim not presented to the district court in the § 2255 proceedings below. *Pierce v. United States*, 976 F.2d 369, 371 (7th Cir.1992). A federal prisoner cannot bring defaulted claims on collateral attack unless he shows both cause and prejudice for the default. *Hale v. United States*, 710 F.3d 711, 713 (7th Cir.2013); *Gant v. United States*, 627 F.3d 677, 683 (7th Cir.2010). Absent a showing of both cause and prejudice, procedural default will only be excused if the prisoner can demonstrate that he is "actually innocent" of the crimes of which he was convicted. *Torzala v. United States*, 545 F.3d 517, 522 (7th Cir.2008).

10

McCoy v. United States, 815 F.3d 292, 295 (7th Cir. 2016).

Normally, the doctrine of procedural default would bar this claim because the petitioner did not raise it before this court or the Seventh Circuit. But the petitioner may overcome procedural default if he can show that he had cause for his failure to raise the issue earlier and actual prejudice. Cross v. United States, 892 F.3d 288, 294 (7th Cir. 2018) (citing Bousley, 523 U.S. at 622). The petitioner easily can show cause for his failure to raise the Davis argument before the trial court: he court sentenced the petitioner in March of 2018 and the Supreme Court did not decide Davis until 2019. "A change in the law may constitute cause for procedural default if it creates 'a claim that is "so novel that its legal basis is not reasonably available to [trial or appellate] counsel."'" Id. (citing Bousley, 523 U.S. at 622). The Supreme Court decided Davis on June 24, 2019—nineteen months after the court accepted the petitioner's guilty plea and fifteen months after the court imposed sentence. The Davis decision was not reasonably available to the petitioner prior to sentencing; he has stated cause for his default.

But the petitioner cannot show prejudice. Section 924(c) "authorizes heightened criminal penalties for using or carrying a firearm 'during and in relation to,' or possessing a firearm 'in furtherance of' any federal 'crime of violence or drug trafficking crime.'" Davis, 139 S. Ct. at 2324. The statute defines a "crime of violence" in "two subparts—the first known as the elements clause, and the second [known as] the residual clause." Id. Section 924(c)(3)(A) is the "elements" clause; it defines a "crime of violence" as "an offense that is a

11

felony" and "has as an element the use, or threatened use of physical force against the person or property of another." Section 924(c)(3)(B) is the "residual" clause, and defines a "crime of violence" as "an offense that is a felony" and "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

In <u>Davis</u> the Supreme Court held that the "residual" clause—§924(c)(3)(B)—was unconstitutionally vague, because it required a judge to imagine the "ordinary" circumstances of whatever the underlying crime may have been and then "guess" whether that crime would, "by its nature," involve a substantial risk that physical force against the person or property of another might be used in the course of committing it. See <u>Davis</u>, 139 S. Ct. at 2325-26. The petitioner argues that his conviction for brandishing a firearm in relation to a crime of violence "falls under 924(c)(3)(B), <u>not</u> 924(c)(3)(A) (the force clause) as there was no use of force employed during [his] crime in question." Dkt. No. 1 at 6-7. Several times since the Supreme Court decided <u>Davis</u>, the Seventh Circuit Court of Appeals has rejected the argument that a Hobbs Act robbery is not a crime of violence under §924(c)(3)A). See <u>United States v. Brown</u>, 973 F.3d 667, 697 (7th Cir. 2020); <u>Oliver v. United States</u>, 951 F.3d 841, 847 (7th Cir. 2020); <u>Velez v. United States</u>, 793 F. App'x 453, 454 (7th Cir. 2020); <u>United States v. Ingram</u>, 947 F.3d 1021, 1025-26 (7th Cir. 2020); <u>United States v. Fisher</u>, 943 F.3d 809, 815 (7th Cir. 2019); <u>United States v. Fox</u>, 783 F. App'x 630, 632 (7th Cir. 2019) ("[W]e have confirmed that a Hobbs Act robbery is a

12

crime of violence under the still-valid 'elements clause' of §924(c)."); United States v. Rogers, 781 F. App'x 559, 560 (7th Cir. 2019); Haynes v. United States, 936 F.3d 683, 690 (7th Cir. 2019) ("Hobbs Act robbery is a categorical crime of violence under § 924(c) because it has as an element the actual, attempted, or threatened use of force.").

The Seventh Circuit has had numerous opportunities since the Supreme Court's decision in Davis to change its position on whether Hobbs Act robbery constitutes a crime of violence under the elements clause of Section 924(c)(3)(A). It has not done so. Seventh Circuit decisions bind this court. The petitioner's conviction for Hobbs Act robbery is a crime of violence under the elements clause, Section 924(c)(3)(A). Davis does not entitle the petitioner to relief.

The petitioner also asks how he could have been convicted of brandishing a gun when he was not the person who brandished it. Count Thirteen charged the petitioner with violating 18 U.S.C. §§924(c)(1)(A)(ii) and (c)(1)(C)(i) *and* 18 U.S.C. §2.

> Under 18 U.S.C. § 2, a person who aids or abets an offense is punishable to the same extent as a principal. 18 U.S.C. § 2. In other words, even if [a defendant] did not actually hold and brandish the gun, his conviction under Section 2 means that he is just as guilty of brandishing the gun as his co-defendant. *United States v. Scroger*, 98 F.3d 1256, 1262 (10th Cir. 1996) ("It is well established that aiding and abetting is not an independent crime under 18 U.S.C. § 2; it simply abolishes the common-law distinction between principal and accessory."); *United States v. Newman*, 755 F.3d 543, 545-46 (7th Cir. 2014).

Jones v. United States, No. 17-cv-933-JPS, 2017 WL 3016819, at *2 (E.D. Wis. July 14, 2017).

13

In pleading guilty, the defendant admitted that he and Jrakar Gaddis went into the Metro PCS store while Williams waited in the car. Gaddis took a 9mm handgun out of his pants, pointed it at the employees and demanded what was in the cash register. The petitioner went to the counter and an employee put money into a white bag and gave it to the petitioner. Gaddis and the petitioner then returned to the car and Williams drove them to Paul Rogers' house. United States v. Brider, Case No. 16-cr-170 at Dkt. No. 70, pp. 14-15. So it was Jrakar Gaddis who "brandished" the gun—"'[b]randish' means to 'display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person.' 18 U.S.C. § 924(c)(4)." United States v. Cardena, 842 F.3d 959, 1001 (7th Cir. 2016). The petitioner aided and abetted Gaddis, which made the petitioner just as guilty of brandishing the 9mm in the Metro PCS store as if he had been the one holding the gun. And the petitioner admitted that when he pled guilty before this court.

Because the petitioner cannot show that he was prejudiced by his failure to raise Davis within a year after his conviction became final, and because he pled guilty to aiding and abetting Jrakar Gaddis in brandishing a firearm in relation to a crime of violence, the court must deny the motion.

### III. Motion to Appoint Counsel (Dkt. No. 6)

On March 19, 2020, the petitioner filed a motion asking the court to appoint him an attorney. Dkt. No. 6. The petitioner stated only that he was confused in the "legal law process" and asked if it would be possible to have a court appointed lawyer. Id.

14

There is no statutory or constitutional right to court-appointed counsel in federal civil litigation. Pruitt v. Mote, 503 F.3d 647 (7th Cir. 2007). This is particularly true in habeas cases; "[a] litigant is not entitled to appointed counsel in a federal postconviction proceeding." Taylor v. Knight, 223 F. App'x 503, 504 (7th Cir. 2007) (citing Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); Powell v. Davis, 415 F.3d 722, 727 (7th Cir. 2005)). The Criminal Justice Act gives a district court the discretion to appoint counsel if "the interests of justice so require." 18 U.S.C. §3006A(A)(2)(B).

The interests of justice do not require the court to appoint counsel for the petitioner. The court understands the arguments the petitioner has made. Those arguments do not have merit. The court will deny the motion to appoint counsel.

## IV. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability,

15

because reasonable jurists could not debate that the petitioner's motion to vacate, set aside or correct his sentence plainly does not entitle him to relief under 28 U.S.C. §2255(a).

## V. Conclusion

The court **ORDERS** that the petitioner's motion to vacate, set aside or correct his sentence under 28 U.S.C. §2255 is **DENIED**. Dkt. No. 1.

The court **DENIES** the petitioner's motion for appointment of counsel. Dkt. No. 6.

The court **ORDERS** that this case is **DISMISSED** with prejudice. The clerk will enter judgment accordingly.

The court **DECLINES TO ISSUE** a certificate of appealability.

Dated in Milwaukee, Wisconsin this 29th day of January, 2021.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**